**PUAILOA TAVETE, Plaintiff-Appellant**

**v.**

**Estate of LAGAFUAINA LAISENE,**
**FA'AOPOOPO LAGAFUAINA, Executrix; HUGO GEBAUER;**
**MARCUS LANGKILDE, personally and as Executor of the Estate**
**of MARIE LANGKILDE; LEFAGA BEAVER;**
**SMITH HO CHING; TELE'A PULETASI;**
**FALENOFOA STEFFANY; ROBERT C. PAYES;**
**ROY J.D. HALL, Jr.; TUI MARCUS;**
**and SOLA PENEI SEWELL,**
Defendants-Appellees

High Court of American Samoa
Appellate Division

AP No. 20-89
LT No. 18-87

April 18, 1991

Before FONG,[*] Acting Associate Justice, Presiding, KLEINFELD,[**] Acting Associate Justice, MALAETASI, [***] Acting Associate Justice, VAIVAO, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendants Lagafuaina, Payes, and Sewell, Albert Mailo
For Defendants Gebauer, Ho Ching, Marcus, Puletasi,
and Steffany, Gata E. Gurr
For Defendant Langkilde, William H. Reardon
For Defendant Beaver, Tautai A.F. Fa'alevao

KLEINFELD, J.:

This appeal involves a dispute a century old. We affirm the decision below. This decision should end the dispute over who owns the disputed 60 acres of Malaeimi, the Puailoa family or the heirs and assigns of Lagafuaina Laisene. The Lagafuaina Laisene heirs and assigns own it.

The Land and Titles Division published an opinion at 11 A.S.R.2d 54 (1989), and a decision on a motion for reconsideration at 12 A.S.R.2d 84 (1989). These decisions are masterpieces of lucidity and precision. We adopt the statements of fact in those decisions and the analysis of law, except for the legal analysis on the two issues we do not find it necessary to reach, adverse possession and laches. Since we affirm on the main ground of the decision below, *res judicata*, we do not reach these alternative grounds of the decision below. The summary of facts and law herein is designed only to facilitate easy reference, and the reader needing a more complete explanation should read the decisions of the Land and Titles Division.

---

[*]Honorable Harold M. Fong, Chief Judge, United States District Court, District of Hawaii, serving by designation of the Secretary of the Interior.

[**]Honorable Andrew J. Kleinfeld, Judge, United States District Court, District of Alaska, serving by designation of the Secretary of the Interior.

[***]Honorable Maleatasi Togafau, District Judge, serving by designation of the Secretary of the Interior.

41

In 1895 Fanene of Nu'uuli defeated W. McArthur & Company in the Supreme Court of Samoa, when the Company attempted to register a mortgage on land called Malaeimi in the village of Faleniu. In 1906 Puailoa Vaiuli, who had developed the land and had assisted Fanene of Nu'uuli in defeating the McArthur claim, leased 360 acres within Malaeimi to the Church of Jesus Christ of Latter Day Saints. The rent was paid by the Church to Puailoa Vaiuli until he died in 1929. After his death, his widow, Salataima, received the rent.

The critical determination of ownership in this case arose out of a dispute in 1931 between matais of the Puailoa family and Puailoa Vaiuli's widow, Salataima, over who was entitled to the rent. If Puailoa Vaiuli had owned the land individually, then his widow was entitled to the rent, but if it had been communal land of the Puailoa family, then the Puailoa family, through its matais, would be entitled to the rent. Salataima, the widow, was not a member of the Puailoa family, and having no children by Puailoa Vaiuli, she had no right to remain on the land if it was Puailoa family land.

The High Court decided in the 1931 case, *Nouata v. Pasene*, LT No. 18-1930, that the widow was entitled to the rent, not the Puailoa family. Here is the critical language of the 1931 *Nouata* decision:

> [T]hat part of Malaeimi that is leased to the Mormon missionaries is the property of the widow of Puailoa and that she should have during her lifetime the rents.
> . . .
>
> While she is living it is suggested that she shall make a written statement signed by two witnesses, who she wants this money to go to after her death. It is only a suggestion but it might be a good idea for her to give it to the Puailoa family after she dies.

Puailoa matais approached Chief Justice Wood, Governor Lincoln, and United States Senator Hiram Bingham in their political and legal attempts to have this decision overturned, but it was not reopened. The judgment stood.

In 1953 Salataima sold the Church 300 of the 360 acres. She died in 1956 and left her brother Lagafuaina, whose estate is the lead defendant in the case at bar, the remaining 60 acres of Malaeimi. She had not made a written, witnessed statement that the Puailoa family

should receive the rent after her death, as the court had suggested in 1931. The defendants in this case, in addition to Lagafuaina's estate, include a number of individuals to whom he sold portions of the 60 acres, his granddaughter, who built a house on the land, and other persons taking interests through Lagafuaina. Lagafuaina and those taking interests under him have invested in improvements of a value exceeding a million dollars since the late 1950s.

The Puailoa family never accepted its 1931 defeat. In 1978, 47 years after the judgment, Puailoa Tavete moved for a new trial in the 1931 case. The motion, filed in *Nouata v. Pasene*, LT No. 18-1930, was denied. Appeal was taken, and the appellate division upheld the denial in a decision written by Acting Associate Justice Kennedy, now Justice Kennedy of the United States Supreme Court:

> [T]he predecessor in interest of the party making this motion submitted himself to the jurisdiction of the trial court in the 1931 litigation and therefore had sufficient notice of the pendency of the suit. The only way, then, that the irregularity allegedly committed by the 1931 court in making a determination concerning the status of the land can be grounds for finding the judgment void is if the determination was so remote from the subject matter of the litigation that the court could not adjudicate the two matters simultaneously. . . .
>
> [I]t was apparently understood by all parties that the status of the land Malaeimi, whether personally belonging to Salataima or whether communal, was in dispute as well as who could lawfully claim the *matai* title Puailoa. . . . [T]he two matters were inextricably intertwined, and . . . [Puailoa Nouata], who was apparently the party adversely affected by any determination of the status of the land Malaeimi, was reasonably and actually notified that the two matters would be jointly resolved.

*Nouata v. Pasene*, 1 A.S.R.2d 25, 31-33 (1980). The *Nouata* 1980 decision did not construe the language of the 1931 decision, but it did decide with finality that the decision should not be reopened, on account of lack of jurisdiction, to decide who had title to the 360 acres and that the decision was binding as to the Puailoa family: "We intimate no views

43

as to the interpretation of the 1931 decision or its bearing on the ultimate question of title, only that it is valid as to these parties." *Id.* at 35.

The Puailoa family, though, still did not accept the result. The family began moving people onto the 300-acre portion of Malaeimi which Salataima had sold to the Church. The Church sued them for trespass and lost in *Reid v. Aipopo*, LT Nos. 007-79, 041-79. The trial court construed the 1931 decision to give the widow only "the rent from the church lease." The court then construed the 1931 decision to establish that Malaeimi was communal land of the Puailoa family, so the widow's conveyance of 300 acres was void. The appellate division affirmed as to the 300 acres Salataima had sold the church, on the ground that this construction amounted to a finding of fact and was not clearly erroneous. *Reid v. Puailoa*, AP No. 14-82 (March 30, 1983) (the reported opinion at 1 A.S.R.2d 85 does not include the full slip sheet opinion).

It is quite important to note, as the trial division in the case at bar did, that the trial division's decision in *Reid* was reversed, insofar as it had any bearing on Lagafuaina's 60 acres. The appellate decision says:

> The judgment of the trial court purported not only to affect the status of the land claimed by the Mormon Church, but also the status of an additional 60 acres to which the Church had no connection, and, as well, addressed the rights and liabilities of several persons who were not parties to the action. The trial court eventually terminated the property rights of several individuals without their knowledge and without granting them an opportunity to defend their interests.

> Elementary concepts of due process require notice and a hearing prior to the deprivation of property rights. . . . One is not bound by a judgment resulting from litigation in which he is not designated as a party and to which he has not been made a party by service of process. . . .

> Those portions of the decision of the trial court attempting to dispose of property not claimed by the Mormons, and affect[ing] the rights of individuals who were not parties to the litigation were erroneous and are reversed.

44

*Reid v. Puailoa Tavete*, AP Nos. 014-82, 015-82, 016-82, slip op. at 16-17.

In the same year as his success on appeal regarding the 300 acres, Puailoa Tavete filed the present lawsuit regarding the 60 acres. The theory of the lawsuit is that the 1979 decision's construction of the 1931 decision on the 300 acres should also be applied to the 60 acres, so that the Puailoa family, rather than the various individuals taking under Lagafuaina, will be deemed to have title. The trial court held that the 1931 decision was *res judicata* and construed the decision to establish that the entire 360 acres was individually owned by Salataima and not communally owned by the Puailoa family. The trial court found that the parties with interests in the 60 acres were not bound by the 1979 judgment, because they were not parties or in privity with parties which participated in that litigation. We think that this is exactly right.

The long and complex history makes the issues seem more complicated than they are. The chain of title for Malaeimi divided into two when Salataima sold 300 acres to the church and left 60 acres to her brother Lagafuaina. The 300 hundred acres and the 60 acres have been the subject of separate litigation. If A conveys Blackacre to B and Whiteacre to C, and then D, claiming title superior to A's to both parcels, successfully sues B for title to Blackacre, C's title to Whiteacre is unaffected by the judgment. C was not a party to D's litigation against B, so he cannot be precluded from re-litigating the issue which D litigated against B.

Puailoa Tavete is in privity with the matais of the Puailoa family who litigated in 1931, because he takes whatever interest he holds on behalf of the family from the matais who claimed to hold an interest in the 360 acres in 1931. The defendants in this case who took their interests from Lagafuaina are in privity with Lagafuaina, because they took from him, and their title can be no better than his. The estate of Lagafuaina is in privity with Salataima because Lagafuaina inherited from her, and his estate's title can be no better than hers. The estate of Lagafuaina, though, is not in privity with the Mormon Church and so is not bound by the Church's defeat in the *Reid* case, because Lagafuaina took from Salataima, not from the Church. His title is not dependent on the Church's title, because the chain of title split into two branches when Salataima sold 300 acres to the Church and devised 60 acres to her brother, Lagafuaina.

Of course we consider the persuasive force of the *Reid* case, even though it is not binding upon the Lagafuaina interests. The doctrine of *stare decisis* is inapplicable, because it applies only to questions of law, not questions of fact or applications of principles of law to particular facts. 20 Am. Jur. 2d *Courts* § 185 (1965). Lagafuaina and his heirs did not take title from the Mormon Church and were not parties to *Reid*, so to give any more force to *Reid* would be *res judicata* through the back door. As to the Lagafuaina 60 acres, the Lagafuaina interests were not "parties," and the *Reid* judgment was reversed on appeal, so the trial court decision was not "final." Since *res judicata* applies only to a "final" judgment between the "parties" or those in privity with them, Restatement (Second) of Judgments § 17 (1988), the doctrine cannot apply.

The *Nouata* court in 1931 quite plainly decided whether Malaeimi was individually owned or communally owned. The court described the widow's contention as being that the Puailoa family lands "belonged to the holder of the name Puailoa except that land which was leased by Puailoa to the Mormons and that belongs to her on his death. She also says that this land leased to the Mormons came to Puailoa under the name Vaiuli and not under the name Puailoa." We see no room for doubt that the court meant to decide in that case whether the land was individually or communally owned. Since the Puailoa family were "parties" to that decision, and the decision is "final" under *Nouata v. Pasene*, 1 A.S.R.2d at 35, it does have *res judicata* effect. Restatement (Second) of Judgments § 17. That means that we cannot properly reexamine whether, as between the widow's heirs and assigns and the Puailoa family, the land is individually or communally owned. 46 Am. Jur. 2d *Judgments* § 415 (1969).

The trial court decision in *Reid* may be meant as an interpretation of what *Nouata* means and not a reexamination of *Nouata* on the merits. We have given it respectful consideration, but we find the trial court's interpretation in the case at bar more persuasive. In plain English, *Nouata* decided that the 360 acres was "the property of the widow." This was an answer to the question of whether Malaeimi was her property or Puailoa communal property. What the court called a suggestion to the widow, that she prepare a will stating who should receive the Church rents after her death, is best construed to be exactly what that court said it was--"only a suggestion." We just do not see ambiguity in the language saying that the land was "the property of the widow" or the phrase "only a suggestion." The phrase "she should have during her lifetime the rents" is better interpreted as a concrete answer

46

to the Mormon Church's question, "To whom should we pay the rent?" than words qualifying the widow's title. The Church's question precipitated the dispute, so the court answered it. In 1931, as the trial court in the case at bar pointed out, land was plentiful, but cash was scarce, so the court's attention would naturally be drawn to the issue of specifying who should receive the cash. We do not decide whether the 1931 decision was right or wrong, only that it decided the question of whether the 360 acres was the individual property of Salataima or the communal property of the Puailoa family. Even if erroneous, the 1931 decision is binding. Restatement (Second) of Judgments § 17 comment d.

We adopt the statement of facts in section I of the trial division's decision and affirm it on the basis of the *res judicata* effect of the 1931 decision, which is section II of the trial division's decision, and the effect of *Reid v. Puailoa*, at section IV of the trial division's decision. We do not reach the issue of adverse possession. We intimate no view on whether section III of the trial division's decision regarding adverse possession is correct, because it is unnecessary for us to reach that issue. Likewise, it is not necessary for us to decide whether laches would apply against the Puailoa family, as section V of the trial division finds.

A century of litigation over title to one parcel of land is more than enough. As the 1980 decision in *Nouata v. Pasene* noted, "[T]here must be an end to litigation someday." *Nouata*, 1 A.S.R.2d at 35 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). After 60 years, this is the end. The past must now be past.